IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| GREG DUNIGAN, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-CV-487-NJR-DGW |
| | ) |
| RASHIDA POLLION, TARYN | ) |
| ANCHETA, MELINDA KORANDO, | ) |
| AIMEE LANG, and MARTHA OAKLEY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Greg Dunigan is a former inmate in the custody of the Illinois Department of Corrections ("IDOC"). Dunigan filed this action on May 1, 2015, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (Doc. 1). Dunigan twice attempted to file complaints in this action, but on both occasions the Court dismissed them without prejudice for their failure to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. (Docs. 8; 15). Dunigan was subsequently appointed counsel (Doc. 15) who filed a second amended complaint on his behalf. (Doc. 24). The Court screened Dunigan's second amended complaint pursuant to 28 U.S.C. §1915A, and he was allowed to proceed on an Eighth Amendment deliberate indifference claim against Rashida Pollion, Taryn Ancheta, Melinda Korando, Aimee Lang, and Martha Oakley for their alleged failure to treat his sexually transmitted diseases and resulting painful medical condition. (Doc. 28).

This matter is currently before the Court on two Motions for Summary Judgment: one filed by Defendant Pollion (Doc. 66), and one filed by Defendants Ancheta, Korando, Lang, and Oakley (Doc. 72). In the response to the second Motion for Summary Judgment (Doc. 72), counsel for Dunigan stated he "declines to oppose [their] Motion and concedes that it may be granted." (Doc. 85). In light of Dunigan's concession and the arguments presented by Defendants, the Motion for Summary Judgment filed by Ancheta, Korando, Lang, and Oakley (Doc. 72) is granted. For the reasons set forth below, Defendant Pollion's Motion (Doc. 66) is also granted.

## FACTUAL BACKGROUND

Dunigan's claim against Defendant Pollion relates to medical treatment she provided for sexually transmitted diseases while Dunigan was incarcerated at Menard Correctional Center ("Menard"). Dunigan arrived at Menard on February 13, 2015. (Dunigan Depo. 9:24-10:7, Doc. 67-3, p. 3). Upon his arrival, Dunigan underwent a routine medical screening that included basic laboratory testing as well as a syphilis screening, known as a Rapid Plasma Reagin ("RPR") test.[1] (Pollion Depo. 11:16-21, Doc. 67-2, p. 4; *Dunigan Medical Records*, Doc. 67-1, p. 3). Dunigan's RPR was reactive, or positive, indicating Dunigan had been exposed to syphilis at some point;[2] however, a quantitative test produced a "zero" result, indicating the syphilis bacterium was not

---

[1] Dunigan's deposition testimony regarding the RPR is inconsistent. In some instances, he indicates he may have had blood work done on February 18, 2015, but at other times he testifies that he never received any such testing. (Doc. 67-3, pp. 5-6). In his response to Defendant Pollion's motion, however, Dunigan does not dispute that blood testing, including testing for syphilis, was conducted on February 18, 2015. Further, the Court notes that Dunigan's medical records (Doc. 67-1) include the results of a RPR test conducted on that date. Accordingly, the Court finds that Dunigan was tested for syphilis on February 18, 2015, and does not consider any contradictory statements made at his deposition.

[2] Once a person has been exposed to syphilis, any subsequent RPR test will reveal a "reactive" or "positive" result, even if the bacterium is not currently active. (Doc. 67-2, p. 6).

currently active (Pollion Depo. 16:12-18:1, Doc. 67-2, pp. 5-6; *see Dungan Medical Records,* Doc. 67-1, pp. 3-4). In other words, Dunigan's blood work indicated that he had been "exposed to the disease [syphilis], and at some point was treated for it" but, it was not active at the point in time he was tested. (Pollion Depo. 17:8-11, Doc. 67-2, p. 6). Dunigan attests he advised the healthcare provider conducting his screening that he had sores on his penis and other parts of his body. (Affidavit of Greg Dunigan, Doc. 86-1, ¶ 2). Dunigan also told the screening nurse that he had been notified by a recent sexual partner that she was being treated for syphilis. (Dunigan Depo 13:19-25, Doc. 67-3, p. 4).

Soon after his intake screening, on March 6, 2015, Dunigan was seen on nurse sick call complaining of a sore on his penis and a rash. (*Dunigan Medical Records,* Doc. 67-1, p. 7). The nurse referred Dunigan for further evaluation by a nurse practitioner or physician. (Pollion Depo. 11:23-12:3, Doc. 67-2, p. 4; *Dunigan Medical Records,* Doc. 67-1, p. 7). Accordingly, on March 9, 2015, Dunigan was examined by Pollion, an advanced practice nurse licensed with the State of Illinois and employed as a nurse practitioner at Menard. (Pollion Depo. 7:13-8:6, Doc. 67-2, pp. 3-4; *Dunigan Medical Records,* Doc. 67-1, p. 9). The parties dispute what occurred during this examination. Dunigan testified during this examination he told Defendant Pollion "the same thing" he told the nurse in receiving and showed her the sores on his genitals and neck, and in his mouth. (Dunigan Depo. 21:20-23, Doc. 67-3, p. 6). Dunigan asserts the sores were open, and the sore on his genitals was oozing. (Dunigan Depo. 21:20-22:1, Doc. 67-3, p. 6). Dunigan also asserts Defendant Pollion started telling him it looked like syphilis or herpes, but she did not provide any medication to treat his condition. (Dunigan Depo. 22:2-6, Doc. 67-3, p. 6).

Pollion testified that at this examination Dunigan complained of a rash between his legs and a sore on his penis. (Pollion Depo. 12:18-22, Doc. 67-2, p. 4). Pollion did not see a rash, but confirmed there was a dried sore on Dunigan's penis. (Pollion Depo. 12:18-22, Doc. 67-2, p. 4; *Dunigan Medical Records,* Doc. 67-1, p. 9). Pollion determined that the sore was likely a dried herpes lesion, but she could not culture the lesion and provide a definitive diagnosis because of its dried state. (Pollion Depo. 12:21-13:3, Doc. 67-2, pp. 4-5). Pollion testified that she told Dunigan to put in for nurse sick call again if the sore opened up. (Pollion Depo. 13:10-12, Doc. 67-2, p. 5). Pollion did not treat Dunigan for syphilis at this appointment because his February 18, 2015 lab results indicated that the bacterium was not active. (Pollion Depo. 15:18-17:11, Doc. 67-2, pp. 5-6).

Soon after, on March 25, 2015, Dunigan was seen by Pollion complaining about a sore on his penis. (Dunigan Depo. 26:10-13, Doc. 67-3, p. 7; *Dunigan Medical Records,* Doc. 67-1, pp. 12-13). Dunigan testified at this appointment Pollion told Dunigan he had syphilis or herpes, but did not do provide any treatment. (Doc. 67-3, p. 7). Pollion testified that her examination on this date revealed a small open area on the sore of his penis, though there was no drainage. (Pollion Depo. 21:8, Doc. 67-2, p. 7). Despite Dunigan's positive syphilis test, Pollion stated she did not believe the sore was associated with an active infection because syphilis sores are not usually painful, and Dunigan complained his sore was painful. (Dunigan Depo. 26:19-22; Pollion Depo. 21:10-12, Doc. 67-2, p. 7). After reviewing her clinical dermatology book, Defendant Pollion believed the sore might be a chancroid and, in light of this diagnosis, prescribed

Dunigan Zithromax as part of his treatment plan. (Pollion Depo. 21:18-22:3, Doc. 67-2, p. 7; *Dunigan Medical Records,* Doc. 67-1, p. 13).

The record concerning a third examination by Defendant Pollion is unclear. At his deposition, Dunigan testified that he had put in another request to see Pollion regarding sores on his penis, but when he went to her office, she told Dunigan she did not want to see him. (Dunigan Depo. 28:4-6, Doc. 67-3, p. 7). He also testified at his deposition, however, that Pollion "examined [him] every time … the whole three times sign her [*sic*]." (Dunigan Depo. 23:3-4, Doc. 67-3, p. 6). Pollion testified that Dunigan was scheduled to see her at the Seizure Clinic on April 24, 2015; however, this appointment was cancelled, because Dunigan had been taken off his seizure medication and was no longer being seen through the Seizure Clinic. (Pollion Depo. 27:3-8, Doc. 67-2, p. 8). Pollion testified that she did not recall having contact with Dunigan on this date. (Pollion Depo. 27:3-8, Doc. 67-2, p. 8). It is undisputed that Defendant Pollion did not evaluate Dunigan again in connection with the allegations in this lawsuit.

Dunigan was examined, however, by Dr. Trost in November, 2015. (Pollion Depo. 29:3-5, Doc. 67-2, p. 9). Dr. Trost treated Dunigan for syphilis based on his complaints of painful urination and the positive RPR from February, 2015. (Trost Depo. 16:7-8, Doc. 86-3, p.4; Pollion Depo. 30:2-3, Doc. 67-2, p. 9). Dunigan was transferred to Big Muddy Correctional Center ("Big Muddy") while receiving treatment for syphilis in November 2015. (Dunigan Depo. 29:10-24, Doc. 67-3, p. 8). Dunigan also was diagnosed and treated for herpes while at Big Muddy. (Dunigan Depo. 30:13-31:7, Doc. 67-3, p. 8).

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. The Seventh Circuit called summary judgment "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

*Eighth Amendment Deliberate Indifference*

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Dunigan must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Defendant does appear to contest that Dunigan's medical condition qualifies as a

"serious medical need"³ and therefore the Court finds this point conceded. The only issue remaining before the Court is whether Pollion acted with a sufficiently culpable state of mind—deliberate indifference.

## Discussion

Dunigan argues summary judgment is inappropriate because material issues of fact exist as to Pollion's knowledge of his syphilis, Pollion's failure to treat his syphilis, and the resulting pain and suffering. (Doc. 86, p. 2). The Court disagrees.

Deliberate indifference to the serious medical condition of a prisoner only violates the Eighth Amendment where it is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate the relevant officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A plaintiff does not have to prove his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v.*

---

³ The following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.")

*Snyder,* 546 F.3d 516, 524 (7th Cir. 2008).

While Dunigan clearly disagrees with Pollion's course of treatment, it is well-established that no constitutional claim arises unless the medical treatment was 'blatantly inappropriate.'" *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir.2006)). Courts give deference to medical professionals in treatment decisions unless no minimally competent professional would have acted similarly in the same circumstances. *Pyles*, 771 F.3d at 409. In other words, federal courts will not interfere with a medical professional's pursuit of a particular course of treatment unless that decision represents so significant a departure from accepted professional standards that it calls into question whether the individual was actually exercising their professional judgment. *Pyles*, 771 F.3d at 409.

The record before the Court indicates Pollion's treatment of Dunigan for herpes, rather than syphilis, was not a significant departure from accepted professional standards and therefore did not violate Dunigan's Eighth Amendment rights. Pollion evaluated Dunigan's complaints of painful genital sores on at least two occasions. (Pollion Depo., 12:18-22, Doc. 67-2, p. 4; Pollion Depo. 18:16-18, Doc. 67-2, p. 6). Pollion provided a working diagnosis that Dunigan suffered from a "chancroid"—herpes related lesion—and prescribed medications to treat that condition after her second examination of Dunigan.[4] (Pollion Depo., 21:16-22:3, Doc. 67-2, p. 7; *Dunigan Medical*

---

[4] While the Court recognizes that Dunigan has provided a somewhat different rendition of what occurred at this second appointment (insofar as he generally asserts that Defendant did not provide any treatment for his condition), his testimony and affidavit are vague, do not specifically contradict Defendant's explanation of events (i.e. whether he received the prescribed medication), and are contrary to his medical

*Records,* Doc. 67-1, p. 13). The deposition testimony of Dr. Trost specifically supports Pollion's course of treatment. Dr. Trost testified that a positive RPR finding simply indicates that the person had syphilis at some point in time. (Trost Depo. 27:1-4, Doc. 87-1, p. 7). Because there were zero dilutions of his serum at the time of the RPR test, Dr. Trost testified Dunigan did not appear to have an active syphilis infection. (Trost Depo. 27:9-16, Doc. 87-1, p. 7). Pollion's failure to diagnose Dunigan with syphilis based on the positive RPR test, therefore, was neither blatantly inappropriate nor a significant a departure from accepted professional standards. Further, Dr. Trost testified Dunigan's complaints of lesion pain are more typically associated with herpes than syphilis. (Trost Depo. 30:12-17, Doc. 87-1, p. 30). Based on the evidence, Dr. Trost stated he would have most likely believed Dunigan had Herpes, which he would have treated with Zithromax. (Trost Depo. 31:6-9, Doc. 87-1, p. 8). Since this is both the conclusion and course of treatment reached by Pollion, there is no evidence that her care was blatantly inappropriate or a significant departure from accepted professional standards.

Although Dunigan later received treatment for both syphilis and herpes that purportedly resolved his issues (Dunigan Depo. 30:13-31:12, Doc. 67-3, p. 8), that evidence alone does not establish that Pollion intentionally or recklessly disregarded Dunigan's needs. First, the continued treatment for herpes supports her original diagnosis. Second, the Seventh Circuit has held that a later different diagnosis alone is not sufficient to create a question of fact precluding summary judgment. *Ortiz v. Webster*,

---

records. As a result, Dunigan's statements are insufficient to create a question of fact that precludes summary judgment.

655 F.3d 731, 738 (7th Cir. 2011); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). For these reasons, Defendant Pollion is entitled to judgment as a matter of law.

### CONCLUSION

For reasons set forth above, the Motion for Summary Judgment filed by Defendant Pollion (Doc. 66) and the Motion for Summary Judgment filed by Defendants Ancheta, Korando, Lang, and Oakley (Doc. 72) are **GRANTED**. Dunigan's claims are **DISMISSED with prejudice,** and the Clerk of Court is **DIRECTED** to close this case and to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: August 22, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**